Filed 4/24/14  P. v. Quezada CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D062939 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. JCF27256) |
| RAMON RAMIREZ QUEZADA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Imperial County, Raymundo Ayala Cota, Judge.  Affirmed.

Patrick Morgan Ford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Anthony Da Silva, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Ramon Ramirez Quezada stabbed the victim, as he was trying to rescue his wife from gang members who had assaulted her.  Quezada was charged

with attempted murder and assault with a deadly weapon; the district attorney further alleged the crimes were committed for the benefit of a criminal street gang.

At Quezada's trial, a gang expert testified the attempt to murder the victim was gang related; in addition, at trial the prosecution presented a tape recording of a jailhouse conversation between Quezada and another gang member in which Quezada discussed dissuading the victim and other witnesses from testifying at Quezada's trial. The jury acquitted Quezada of attempted murder but found him guilty of assault with a deadly weapon; the jury also found the assault was committed for the benefit of a criminal street gang.

Contrary to Quezada's argument on appeal, there is sufficient evidence to sustain the jury's finding the assault was gang related. In particular, the expert's testimony with respect to the stabbing Quezada inflicted on the victim was relevant as to both the attempted murder allegation and the assault charge. We also reject Quezada's argument that the trial court abused its discretion in admitting his jailhouse conversation, along with an interpretation of it offered by the prosecution's gang expert. The conversation was highly probative: it not only demonstrated a consciousness of guilt, but it was also relevant with respect to Quezada's gang affiliation. Its probative value far outweighed any prejudice that arose from the fact otherwise ambiguous portions of the conversation called for expert interpretation.

Accordingly, we affirm the judgment of conviction.

2

FACTUAL BACKGROUND

A. *Afternoon Melee*

In May 2011, the victim in this case, Alfonso Pineda, was living in a home in Brawley. Alfonso was living with his girlfriend, Diane Verdusco, Verdusco's son, Mark, and Mark's girlfriend, Monique Arellano.[1] Diane's former husband, Richard Pacheco, who was suffering from cancer, was also a member of the household.

Mark was an associate of a Brawley criminal street gang known as "Brole." His girlfriend, Monique, was from Calexico and associated with a rival Calexico criminal street gang known as "Calexia."

Around 3:00 p.m. on the afternoon of May 11, 2011, Monique was on the sidewalk in front of the house in Brawley when she was approached by two women, Vanessa Miranda, and Vanessa Mendoza. Miranda was known in the community by the gang moniker, Guera, meaning fair or blonde; Mendoza was known by the gang moniker, Terca, meaning stubborn or obstinate. Miranda and Mendoza confronted Monique and told her that, because she was affiliated with Calexia, her relationship with Mark, who was a Brole associate, was disrespectful of Brole.

Monique, Miranda and Mendoza started walking around the side of the house into the backyard. Diane, who had been drinking a beer in the front yard, followed the women into the backyard. In the backyard, Monique and Mendoza began fighting; Richard

---

[1]    Because their familial and romantic relationships are material to what transpired and it is easier to comprehend those relationships by doing so, we will refer to members of the victim's household by their first names.

3

attempted to separate them. Miranda responded by punching Richard and assisting Mendoza in her fight with Monique. Diane joined the fight by pushing Miranda away from Monique; Diane and Miranda then began fighting.

Eventually, Richard was able to separate the four combatants. When the fighting stopped, Mendoza yelled that she and Miranda would go get others and finish the fight; Mendoza and Miranda then left the scene.

B. *Assault*

During the course of the rest of the afternoon and evening, Alfonso, Diane and Monique drank several beers. Around 10:15 p.m., while Alfonso was putting beer in the refrigerator inside the house and Diane and Monique were outside in the front yard, two cars drove by the house and parked nearby. About 10 gang members got out of the cars and began shouting profanities and "Brole, Brole. This is my hood. Better respect."

Miranda and Mendoza were among the group that got out of the cars. Miranda, Mendoza and a third woman, Marie Hernandez, who was known in the community by her gang moniker "Cuca," approached the yard where Diane and Monique were standing. Miranda, Mendoza and Hernandez were accompanied by Quezada, who is known by his gang moniker "Spider," and Lawrence Mendivil, who is known by his gang moniker, "Low, Low."

Diane was pulled out of the yard by her hair and fell to the street, where she was punched and kicked in the face. At one point, Monique punched Miranda to get her away from Diane.

4

Alfonso came out of the house and saw Diane lying in the street. Alfonso went to Diane and tried to pick her up. At that point, Quezada and Mendivil pulled out pocket knives and stabbed Alfonso. When someone yelled, "I'm calling the cops," Miranda, Mendoza, Hernandez, Quezada and Mendivil ran back to their cars and fled.

Police and emergency medical personnel responded to the scene. Alfonso was taken to the hospital in shock; he had been stabbed five times, had suffered a collapsed lung and several fractured ribs in addition to the loss of a great deal of blood. At the scene, Diane's eyes were swollen and almost completely shut, her face was also swollen, her nose was bleeding and there were marks on her forehead and lips. Monique also had marks and bruises on her face.

Later, while Quezada was in pretrial detention, he had a telephone conversation with a gang member who was not in custody. The conversation was recorded by law enforcement personnel. According to the prosecution's gang expert, who was asked to interpret the meaning of certain statements, during the conversation Quezada instructed the gang member to contact a third person about approaching Alfonso, Diane and Monique and dissuading them from testifying against him. During the conversation, Quezada also explained that he had given the third person a gun.

At trial, Quezada presented testimony from Miranda, Mendoza and Hernandez to the effect that neither Quezada nor Mendivil were present when Alfonso was attacked. According to the defense witnesses, they were at the scene of the assault on Alfonso because earlier in the day Diane had cheated Miranda and Mendoza in a drug deal and they

5

had come back to ask Diane for the money they had given her. According to the three women, after trading insults with Diane a fight broke out and Diane pulled out a pocket knife.

## PROCEDURAL HISTORY

Quezada and Mendivil were charged by information with attempted murder and assault with a deadly weapon. The information alleged that the attempt was committed for the benefit of, at the direction of, and in association with a criminal street gang. (Pen. Code, § 186.22, subd. (b)(1).) The information further alleged that Quezada and Mendivil personally inflicted great bodily on Alfonso and that Quezada had suffered a prior prison term.

Prior to trial, the prosecution moved to amend the information to include an allegation that Quezada and Mendivil were also guilty of assault with a deadly weapon. The trial court granted the motion to amend.

The jury acquitted Quezada and Mendivil of attempted murder but found both of them guilty of assault with a deadly weapon. The jury also found that the assault was for the benefit of a criminal street gang and that, in committing the assault, both Quezada and Mendivil had personally inflicted bodily injury.

The trial court sentenced Quezada to a prison term of 14 years. The sentence was composed of an upper term of four years for the assault and a consecutive 10-year term for the street gang enhancement. The trial court stayed any sentence on the great bodily injury enhancement. (Pen. Code, § 654, subd. (a).)

6

I

On appeal, Quezada argues there is insufficient evidence to support the jury's finding the assault on Alfonso was, in the words of Penal Code section 186.22, subdivision (b), "for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members." Quezada argues that although the prosecution's expert offered an opinion that the attempted murder was committed for the benefit of the Brole gang, the expert offered no such opinion with respect to the alleged assault with a deadly weapon. We reject Quezada's contention.

Our review of the record shows that although the gang expert testified that he thought the attempted murder was committed for the benefit of the Brole gang and provided no such specific conclusion as to the motivation for the assault count, in his testimony the expert did make reference to the "crimes" committed by Quezada as being for the benefit of the gang. Thus, as a technical matter, the expert's testimony included reference to the assault count.

However, even if we interpret the expert's testimony narrowly and limited to the attempted murder charge, it nonetheless fully supported the jury's determination the closely-related assault was committed for the benefit of the gang. Quezada's argument on appeal ignores the fact that the charges on both the attempted murder and the assault with a deadly weapon were based on the same conduct: the stabbing of Alfonso. Indeed, in moving to amend the information to include the assault count, the prosecutor relied on the fact that "the evidence and theory in this case as to count one [attempted murder] would be identical

to the evidence and theory in this case for count two [assault]." We also note that assault with a deadly weapon is a lesser related offense of attempted murder. (*People v. Nelson* (2011) 51 Cal.4th 198, 215; *People v. Parks* (2004) 118 Cal.App.4th 1, 6.) These circumstances establish fairly clearly that the expert's testimony as to Quezada's motivation in attempting to murder Alfonso by stabbing him applied as a matter of simple logic with equal force to defendant's motivation in assaulting him with a deadly weapon by stabbing him.

We hasten to add that even in the absence of the expert's testimony, there was ample other evidence the crime was committed for the benefit of the Brole gang. Evidence from witnesses established that the afternoon melee between Diane, Monique, Mendoza and Miranda was precipitated by Monique's affiliation with Calexia and that later, when the assault occurred, the perpetrators were part of a larger cohort, at least one of whom was shouting "Brole, Brole." We also note the jury was presented with a tape-recorded conversation between Quezada and another identified Brole gang member in which Quezada discussed efforts to intimidate Alfonso, Diane and Monique. Taken together, these circumstances created a strong inference the assault was committed for the benefit of the Brole criminal street gang.

In sum, there was sufficient evidence to support the jury's gang enhancement finding.

## II

Next, Quezada argues the trial court erred in admitting the tape recording of his conversation with another gang member. Following an Evidence Code section 402 hearing,

8

the trial court admitted the recording along with testimony from the gang expert with respect to the meaning of what was transpiring in the conversation.

Contrary to Quezada's contention on appeal, the trial court did not abuse its discretion under Evidence Code section 352 in admitting evidence of the conversation. The trial court has broad discretion to determine whether the "probative value [of the evidence] is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) We review the trial court's evidentiary ruling for abuse of discretion. (*People v. Whisenhunt* (2008) 44 Cal.4th 174, 203.) When discretion is vested in the trial court, the exercise of that discretion "must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Jordan* (1986) 42 Cal.3d 308, 316.)

Here, the recorded conversation was probative with respect to both Quezada's participation in the assault, which was contested, and his participation in gang activities. In particular, the statements Quezada made to the effect that the other gang member should help him in dissuading Alfonso, Diane and Monique from testifying showed both a consciousness of guilt on Quezada's part and a fairly close relationship with Brole gang members. (See *People v. Vines* (2011) 51 Cal.4th 830, 867.) Contrary to Quezada's argument, Quezada's reference to a gun Quezada had provided the third person was relevant

9

to the charges against him. In the context of the conversation, it is clear Quezada mentioned the gun because he intended that it be used as a means of dissuading the witnesses.

We also reject Quezada's contention that the use of the gang expert to interpret the conversation was inappropriate. As the Attorney General notes, a gang expert may testify on matters that are sufficiently beyond common experience, such as gang territories, culture and practices, if the testimony will assist the trier of fact. (Evid. Code, § 801, subd. (a); *People v. Gardeley* (1996) 14 Cal.4th 605, 617; *People v. Valdez* (1997) 58 Cal.App.4th 494, 506.) Here, the gang expert explained that Quezada's statement "keep it going" was a reference to earlier efforts to dissuade the witnesses and that Quezada's reference to a "cuarno" or "horn" was a reference to a gun he had provided the third person. These are matters beyond the common knowledge of jurors and were the proper subject of expert testimony. Moreover, in light of instructions that the jurors were the exclusive judges of witnesses' credibility and not bound by the expert's opinion, the risk of undue prejudice was minimal. (CALCRIM No. 226; CALCRIM No. 332.)

Moreover, we note there was nothing unduly inflammatory or unfairly prejudicial in the recorded conversation. The conversation did not include references to information that would create any unfair bias toward Quezada or that was otherwise irrelevant to the charges against him. In light of the clear probative value of the conversation, the trial court did not abuse its discretion in admitting it.

10

DISPOSITION

The judgment is affirmed.

BENKE, Acting P. J.

WE CONCUR:

HALLER, J.

McINTYRE, J.

11